UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:23-CR-36-TAV-DCP |
| ) | |
| COREY L. SIMMS, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on the Government's Emergency Motion Under 18 U.S.C. [§] 3145 For Revocation of Magistrate Judge's Release Order ("Emergency Motion") [Doc. 48], filed on July 21, 2023, and referred to the undersigned on July 24, 2023 [Doc. 58 p. 4]. 28 U.S.C. § 636(b). The Government requests that the Court revoke the release order issued by United States Magistrate Judge Matthew M. Scoble in the District of Alaska on July 20, 2023, in *United States v. Simms,* No. 3:23-mj-00411-KFR-1 (D. Ak. July 20, 2023).[1] The undersigned held a hearing on the pending motion on September 28, 2023. Assistant United States Attorney Brent Jones appeared on behalf of the Government. Attorney Jonathan Wood represented Defendant Corey Sims,[2] who was also present.

---

[1] The Court was provided with a transcript of the July 20, 2023 hearing [Doc. 77] in which Magistrate Judge Scoble decided to release Defendant on conditions [Doc. 65-6, Order Setting Conditions of Release].

[2] In the Indictment [Doc. 76], Defendant's last name is spelled "Simms," but Defendant noted at the hearing before Magistrate Judge Scoble on July 20, 2023, as well as before the undersigned on September 28, 2023, that his last name is spelled "Sims" [Doc. 77 p. 6]. The Court will use the corrected spelling in the body of this Report and Recommendation but retains the spelling from the Indictment in the style of the case because the Indictment has not been amended.

For the reasons discussed herein, the Court **RECOMMENDS** that the Government's Emergency Motion [Doc. 48] be **GRANTED** and that Defendant be detained pending his trial in this matter.

I.  BACKGROUND

The Indictment charges Defendant Sims and five others, with conspiracy to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance; a quantity of acetyl fentanyl, a Schedule I controlled substance; a quantity of heroin, a Schedule I controlled substance; and a quantity of hydromorphone, a Schedule II controlled substance (Count One) [Doc. 76 pp. 1–2]. The Indictment also charges Defendant and one other with conspiracy to commit money laundering (Count Two) [*Id.* at 2–3].[3]

Defendant was arrested in Anchorage, Alaska, on July 18, 2023, on the outstanding arrest warrant from the Indictment [Doc. 70]. On July 20, 2023, Defendant appeared before Magistrate Judge Scoble in the District of Alaska for an initial appearance [Doc. 65, Rule 5(c)(3) Documents].[4] A detention hearing was held immediately following the initial appearance [*See id.*]. Defendant was represented by Assistant Federal Defender Samuel Lee Eilers [Doc. 65-3].

The Government sought to detain Defendant pending trial, arguing that Defendant is presumed to be both a flight risk and a danger due to the nature of the charged offense. Assistant United States Attorney Michael J. Heyman ("AUSA Heyman") argued that with regard to risk of flight, Defendant has a criminal history, including convictions for failing to appear and a more recent conviction of forgery [Doc. 77 p. 10]. In relation to Defendant's dangerousness, AUSA

---

[3] Defendant Sims is not charged in the remaining counts of the Indictment [*See* Doc. 76 p. 4].

[4] A transcript of the July 20, 2023 detention hearing before Magistrate Judge Scoble was provided to the Court upon request and was docketed on October 5, 2023 [Doc. 77].

Heyman argued that Defendant was arrested on September 30, 2020, with approximately $6,000.00 in his pocket as well as a handgun and a Gucci bag containing $33,000.00 in the trunk of the car [*Id.* at 9]. In addition, AUSA Heyman noted the Government has evidence of two or three controlled purchases of narcotics from Defendant [*Id.* at 9–10].

Defendant sought release pending trial, claiming that he is not a risk of flight. Mr. Eilers noted that Defendant has significant familial ties to Michigan, including six children who live there [*Id.* at 7]. He stated that Defendant currently lives in Michigan with his mother, grandmother, and two siblings at a house that was approved in pretrial inspection[5] [*Id.* at 7]. He also stated that Defendant does not have a passport and has never traveled outside of the country [*Id.* at 8]. Mr. Eilers argued that Defendant does not have any significant mental health issues and that his criminal history is "dated" [*Id.* at 8]. Moreover, he stated that Defendant was unaware of the underlying Indictment and was in Alaska visiting the mother of his unborn child [*Id.*]. Finally, Mr. Eilers stated that if released, Defendant could afford, with the help of his family, to travel to Tennessee to face the pending charges [*Id.* at 9].

AUSA Heyman asked that if Defendant is released, the Court stay his release for forty-eight hours to allow the Government to appeal the release order [*Id.* at 12].

After hearing oral argument, Magistrate Judge Scoble found that Defendant had rebutted the applicable presumption because he provided a "credible release plan" [*Id.* at 10–11]. While mindful of Defendant's criminal history, including those charges for failing to appear, violating probation, and forgery, Judge Scoble found that there was not "enough before the Court. . . to find

---

[5] While the transcript characterizes this portion of defense counsel's statement as indiscernible, the Court has listened to the recording and defense counsel said pretrial inspection determined the house was "a suitable release location."

that the [G]overnment ha[d] met their burden" [*Id.* at 11–12]. Judge Scoble noted that much of Defendant's criminal history is dated and includes crimes Defendant was convicted of as a juvenile [*Id.*]. Judge Scoble ordered Defendant released on conditions pending trial [Doc. 65-6]. Specifically, Judge Scoble required Defendant to submit to supervision at the U.S. Probation and Pretrial Services Office in the Eastern District of Tennessee and the Eastern District of Michigan [Doc. 65-6 ¶ 7(a)]. Judge Scoble also prohibited Defendant from obtaining a passport; restricted Defendant's travel to the District of Alaska, Eastern District of Tennessee, and the Eastern District of Michigan; and ordered that he avoid all contact with any victim, witness, and all codefendants [*Id.* at ¶ 7(e)–(g)]. Defendant was prohibited from possessing a firearm, destructive device, or other weapon; using alcohol excessively; and using or unlawfully possessing a narcotic drug or other controlled substance without a valid prescription [*Id.* at ¶ 7(k)–(m)]. Defendant was required to submit to drug testing [*Id.* at ¶ 7(n)]. Finally, he was required to report any contact with law enforcement and to appear in the Eastern District of Tennessee as ordered on August 18, 2023, at 10:30 a.m. [*Id.* at ¶ 7(s)–(t)].

At the Government's request, Judge Scoble stayed the release order until noon on July 24, 2023 [Doc. 65-7], and on July 21, 2023, the Government filed the instant Emergency Motion, objecting to Defendant's release because (1) there is a presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(A) based on Defendant's charges, (2) Defendant failed to overcome this presumption, and (3) Defendant is a danger to the community [Doc. 48 pp. 1–3]. The Government requested that the Court stay the release order pending a hearing in the Eastern District of Tennessee and, ultimately, that the Court revoke the release order and detain Defendant [*Id.* at 3].

On July 24, 2023, District Judge Varlan stayed the release order signed by Judge Scoble, ordering Defendant detained pending resolution of the Government's Emergency Motion and

4

setting a hearing before the undersigned on August 30, 2023 [Doc. 58 pp. 3–4]. On July 25, 2023, the Court appointed Attorney Jonathan Wood to represent Defendant, noting that Defendant would be arraigned on August 30, the same date as the scheduled hearing on the Government's Emergency Motion [Doc. 59 pp. 1–2]. Defendant was transported from Alaska and arrived in this District earlier than anticipated, and thus, he was arraigned on August 10, 2023 [Doc. 66]. At the time of his arraignment, the undersigned ordered that Defendant remain in custody until the August 30 hearing on the Government's Emergency Motion [Doc. 68]. At the request of the parties, the August 30 hearing was subsequently rescheduled for September 28, 2023 [*See* 8/29/23 Notice of Hearing].

## II. SUMMARY OF INFORMATION OFFERED AT THE SEPTEMBER 28 HEARING

At the September 28 hearing on the Government's Emergency Motion, AUSA Jones argued that no conditions of release could assure Defendant's appearance or safety of the community. With respect to Defendant's dangerousness, AUSA Jones argued that the evidence presented links Defendant to dealing 400 grams of fentanyl and quantities of other illegal controlled substances.[6] He noted that Defendant was involved in a number of controlled buys, including those occurring on August 16, 2019; October 16, 2019; November 27, 2019; June 9, 2020; and January 13, 2022, in which Defendant sold between 0.33 grams to 8.02 grams of illegal drugs each time [*See* Doc. 75-1, Government Exhibit 1]. He also stated that Defendant and his Codefendant Marcelus Phillips were stopped by Kentucky police on September 30, 2020, while on their way to Detroit. The Kentucky police officer found approximately $41,850.00 on the

---

[6] AUSA Jones moved into evidence Government Exhibit 1[Doc. 75-1] that includes a variety of documents cataloguing the controlled buys in which Defendant is alleged to have participated as well as his interactions with Kentucky police on September 29 and 30, 2020.

5

Defendants and in the vehicle, as well as a firearm.[7] AUSA Jones argued that during the time Defendant is alleged to have been selling drugs in the Eastern District of Tennessee, Defendant's criminal history indicates that Defendant was prosecuted for assaulting, resisting, and obstructing a police officer; assault-domestic violence; and forgery and was also on probation for part of the time.

With respect to his risk of nonappearance, AUSA Jones stated that Defendant has past felony convictions in multiple states, is alleged to have dealt drugs in Tennessee, and was ultimately arrested in Alaska.

Mr. Wood argued that Defendant should not be detained because (1) Judge Scoble found he could be released; (2) the § 3142(g) factors weigh in favor of release; and (3) it is in dispute whether the Government can show that Defendant was involved in distributing at least 400 grams of fentanyl, making this a "threshold case."[8] Mr. Wood stated that Defendant does not have any connection to Tennessee, but he has a place to live in Detroit with his mother and grandmother and has children living in Michigan. Further, Defendant has connections in Michigan that could help find him work. To the extent the Court is concerned with Defendant's possible drug use, Mr. Wood suggested the Court require Defendant to undergo drug testing while on release. Mr. Wood

---

[7] The Report of Investigation [Doc. 75-1 pp. 23–32] states that $5,850.00 was in Defendant's pocket, $3,000.00 in Codefendant Phillips's pocket, and $33,000.00 in a Gucci bag in the trunk. In addition, a firearm was found in the trunk, which Codefendant Phillips claimed belonged to him [*Id.* at 25–26].

[8] Defendant argues that the amount of fentanyl in question does not meet the 400 grams minimum in order to bring this case under 21 U.S.C. § 841(b)(1)(A), which mandates a minimum term of imprisonment of ten years for cases involving 400 grams or more of fentanyl. Defendant further argues that if this case does not carry a minimum sentence of ten years, the presumption of detention does not apply under 18 U.S.C. § 3142(e)(3)(A).

6

argued that, in the past, Defendant has appeared for his court proceedings and been compliant with probation officers.[9]

Mr. Wood also argued that while there is a presumption that Defendant be detained because he is being charged with distributing at least 400 grams of fentanyl, it is Defendant's position that the amount at issue seems closer to 20 grams and that the Court should take this arguable discrepancy into consideration. Finally, Mr. Wood stated that while the Kentucky police found money and a firearm in the car when they pulled over Defendant and Codefendant Phillips, there were no drugs found in the vehicle. He also reiterated that it was Codefendant Phillips who claimed ownership of the gun.

### III. STANDARD OF REVIEW

The Bail Reform Act of 1984 provides that individuals accused of a federal crime must be released on personal recognizance or on an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If release on personal recognizance or an unsecured appearance bond will not reasonably assure the person's appearance or the safety of the community, the judicial officer shall order that the individual be released on conditions. 18 U.S.C. § 3142(c). However, upon the government's motion, the judicial officer may detain a person charged with certain serious federal crimes or who poses a "serious risk" of flight, witness intimidation, or obstruction of justice, if the judge finds, after a detention hearing, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. §

---

[9] Defendant does not dispute that the timing of the pending charges overlaps with his time on probation. However, Defendant asserts that he is presumed innocent of the charges at this time.

7

3142(f) & -(e). At the detention hearing, the Government must prove by a preponderance of the evidence that the individual is a flight risk and/or by clear and convincing evidence that the person is a danger to the community or others. *See* 18 U.S.C. § 3142(f).

In the instant case, the Government moved for detention, and Magistrate Judge Scoble held a detention hearing, because Defendant Sims is charged with an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more. *See* 18 U.S.C. § 3142(f)(1)(C). Due to the crime charged, a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). In this respect, the Indictment provides probable cause to believe that Defendant has committed an offense under the Controlled Substances Act for which he faces a maximum sentence of ten years or more. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of production with the defendant, while the Government retains the burden of persuasion. *Stone*, 608 F.3d at 945. To satisfy his burden of production, the defendant must present at least some evidence that he is not a danger or a flight risk. *Id.* Even when the defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id*.

"If a person is ordered released by a magistrate judge . . ., the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain

8

the defendant *de novo*.[10] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1127–28 & n.5 (S.D. Ohio 2000) (holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that de novo review is appropriate); *see also United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful de novo review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075, *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order must be "determined promptly." 18 U.S.C. § 3145(a).

## IV. ANALYSIS

As discussed above, the Court finds that the rebuttable presumption in 18 U.S.C. § 3142(e)(3)(A) applies in this case, because Defendant is charged with conspiracy to distribute fentanyl, acetyl fentanyl, heroin, and hydromorphone, which is a violation of the Controlled Substances Act for which the maximum potential penalty is ten years or more. While Defendant maintains that the Court should consider the small amount of drugs that will be proven at trial, the Court finds that in determining whether there is "probable cause to believe that the person committed" the offense that gives rise to a rebuttable presumption under § 3142(e)(3), the Court may look to the charged offense to determine whether the presumption applies. *See United States*

---

[10] Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the Government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC-REW, 2017 WL 5711438, *2-3 (E.D. Ky Nov. 17, 2017) (Wier, MJ), *adopted by*, No. 5:17-CR-26-KKC-REW, 2017 WL 5710443 (E.D. Ky Nov. 27, 2017) (Caldwell, CJ). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all the evidence offered to that point. *Id*. at *3.

9

*v. Stone*, 608 F.3d 939, 945 ("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged.") (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). Therefore, the Court looks to the charged offense to determine whether the presumption applies and even if the presumption is rebutted, the presumption is still a factor that weighs in the total consideration.

The Court notes that during the detention hearing, Defendant proffered that he lives in Detroit, Michigan, with his mother and grandmother; has six children and one on the way; many of his children live in Michigan; has family and friends in Michigan who can help find him a job; has appeared for court dates in the past; has been cooperative with probation; and that he would be willing to submit to drug testing. This proffered evidence, however, goes primarily towards risk of flight, and Defendant arguably has not overcome the burden of production with respect to the danger he faces to the community. *See, e.g., United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (finding defendant failed to overcome presumption with respect to risk of danger where he merely proffered that if released, he could stay with his cousin, agreed to submit to substance abuse treatment and drug testing, and had strong family ties to the area); *United States v. Johnson*, No. CR 5:19-177-DCR, 2019 WL 7040618, at *3 (E.D. Ky. Dec. 20, 2019) (finding the defendant had not overcame the presumption by proffering that he could reside with his grandmother and she would report if he violated his conditions); *United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (finding that while the defendant may have presented sufficient evidence to overcome the risk of flight, he had not presented sufficient evidence to overcome the risk of danger because he had not presented "evidence of his good character, other than his father's willingness to house him and his willingness to appear for scheduled court appearances, both of which go more to the idea that he

would not flee if released than the idea of danger"); *see also United States v. Gwathney-Law*, No. 1:15-CR-00030-GNS-1, 2017 WL 2609044, at *2 (W.D. Ky. June 15, 2017) (concluding that the defendant had failed to overcome the presumption in favor of detention even though he was amenable to a third-party custodian arrangement and GPS monitoring, had a stable residence, substantial ties to the community, minimal criminal history, and strong family support).

With regard to both flight risk and potential danger to the community, the Government has provided evidence that Defendant has an extensive criminal history, including convictions for assault, forgery, and drug related offenses. Further, Defendant has previously failed to appear following a probation violation in Michigan and is alleged to have sold dangerous drugs in this District even while on probation for other convictions. These circumstances are combined with the fact that Defendant has no ties to this District and would be living in Michigan pending trial.

However, even if the Court were to find that Defendant has overcome the presumption in favor of detention, the Government has still met its burden of persuasion that no condition or combination of conditions would reasonably assure the safety of the community or Defendant's appearance at trial under 18 U.S.C. § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against Defendant, (3) Defendant's history and characteristics, and (4) the nature and seriousness of the danger to the community posed by his release. 18 U.S.C. § 3142(g).

First, the nature and circumstances of the offense weigh in favor of detention because the charged offense involves a controlled substance. 18 U.S.C. § 3142(g)(1). Defendant is charged with conspiring to distribute 400 grams or more of fentanyl, a Schedule II controlled substance

and a quantity of acetyl fentanyl, a Schedule I controlled substance; heroin, a Schedule I controlled substance; and hydromorphone, a Schedule II controlled substance over a five-year period.

With regard to the second factor, the Court initially observes that the charged offense is among those crimes for which Congress has deemed the offender particularly dangerous or particularly likely to flee. *See Stone*, 608 F.3d at 947 n.6 (noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee). In this case, the weight of the evidence of the Defendant's dangerousness is significant because the Defendant is charged with engaging in a conspiracy to distribute multiple controlled substances, including fentanyl and heroine. In this regard, the Court notes that drug trafficking is inherently dangerous. *United States v. Hernandez*, No. 1:02–CR–006, 2002 WL 1377911, *2 (E.D. Tenn. Feb. 27, 2002) (Edgar, J.) (holding that drug trafficking is inherently dangerous). Specifically, the Indictment charges that a part of the alleged conspiracy involved more than 400 grams of fentanyl, which is a particularly dangerous controlled substance. *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky 2020) (finding fentanyl to be an "exceptionally dangerous drug" under § 3142(g)(1)) (Stinnett, M.J.); *see also United States v. McCollum*, No. 3:21-CR-35-TAV-DCP-2, 2021 WL 4468937, at *2 (E.D. Tenn. Sept. 29, 2021) (upholding magistrate judge's finding that fentanyl is a particularly dangerous drug under § 3142(g)(1)). Accordingly, the Court also finds that the type of controlled substances charged reveal Defendant to be a serious danger to the community. 18 U.S.C. § 3142(g)(1). Beyond this presumption of dangerousness involving a particularly dangerous drug, the record also contains evidence that the alleged drug trafficking was conducted in a dangerous manner as a firearm was found in the vehicle during the September 2020 traffic stop. In this regard, Defendant presents a significant danger to the community.

12

Moreover, with regard to the weight of the evidence of the Defendant's dangerousness, the Court finds that Defendant has four prior drug related offenses, two assault convictions, and a conviction for forgery. In 2007, when Defendant was seventeen, he was convicted of possession of less than 25 grams of a narcotic and attempted possession of same. The following year, at the age of eighteen, Defendant pleaded guilty to delivery and/or manufacture of less than 50 grams of a controlled substance. In June 2019, Defendant was convicted of assaulting, resisting, or obstructing a police officer for which he was sentenced to one year probation. In April 2020, Defendant was convicted of forgery committed on December 26, 2019. The Pretrial Report indicates that Defendant may have committed the forgery while on probation for assaulting, resisting, obstructing a police officer. Aside from these convictions, Defendant has numerous arrests dating back to 2006, including obstructing judiciary, congress, legislature or commission, a weapons offense, and alcohol-related violations in 2007; stolen vehicle in 2011; and driving without a valid license in 2012, 2014, and 2015. The Court notes that while it may consider arrests as well as convictions in assessing the Defendant's dangerousness, the arrests warrant less weight. *Tolbert*, 2017 WL 6003075, at *5. Overall, the Court finds that the evidence of Defendant's dangerousness weighs in favor of detention.

The Court finds that the weight of the evidence that the Defendant presents a flight risk presents some concern. *See* 18 U.S.C. § 3142(g)(2). Defendant was arrested for a probation violation in August 2007 when he was seventeen and again in 2012. Following his second probation violation, Defendant failed to appear, and a warrant was issued for his arrest. Ultimately, Defendant served ninety days in jail in 2013 for these violations. While these instances occurred over ten years ago, they show a disregard for Court orders, particularly involving returning to Court for proceedings.

13

Case 3:23-cr-00036-TAV-DCP   Document 78   Filed 10/06/23   Page 13 of 16
PageID #: 406

The third factor examines the Defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," along with evidence of whether the Defendant was on conditions of release at the time of the current offense. 18 U.S.C. § 3242(g)(3)(A)-(B). Defendant has many family members who reside in Michigan, including his mother, grandmother, two siblings, and a number of his children. Prior to arrest in Anchorage, Alaska, Defendant was living with his mother and grandmother in Detroit. Defendant has been unemployed since 2020 though he proffered that friends of his in Michigan could help find him a job pending trial. Further, the Court has no evidence that Defendant has any mental health issues. The Court finds all of the above weighs in favor of Defendant's release. However, balanced against these favorable characteristics is Defendant's extensive criminal history. Defendant has numerous convictions beginning at age seventeen, including drug-related crimes, assault, and forgery. Further, Defendant has no ties to this district or to Tennessee more broadly. The Court finds that this factor, taken as a whole, weighs in favor of detention.

Finally, the Court examines the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. 18 U.S.C. § 3142(g)(4). The Government again points to the charged offenses and Defendant's criminal history to argue that the nature and seriousness of the danger he presents is high. AUSA Jones specifically detailed how Defendant's current charges involve actions taken while Defendant was on probation for other felony charges. The Court finds that this factor weighs in favor of detention considering Defendant's extensive criminal history and continued illegal actions.

14

In summary, the Court finds the § 3142(g) factors weigh in favor of detention. The Court has considered the conditions proffered by Defendant, including that he reside with his mother and grandmother in Michigan, seek employment, and submit to drug testing, along with any other conditions and find they do not reasonably assure the Court of the safety of the community and Defendant's appearance at trial. In this regard, the Defendant reported living with his mother and grandmother at the time of the alleged offenses and has ties to other states, including Alaska. Accordingly, the § 3142(g) factors along with the presumption of detention due to the nature of the charges, lead this Court to conclude that there are no conditions or combination of conditions that could reasonably assure the appearance of Defendant and the safety of the community. The Court recommends that that the District Court grant the Government's Motion Under 18 U.S.C. [§] 3145 For Revocation of Magistrate Judge's Release Order [Doc. 48].

## V. CONCLUSION

The Court has carefully considered the Pretrial Services Report; the August 9, 2023 memorandum from United States Probation Officer Travis Worthington; the transcript of the July 20, 2023 detention hearing in the District of Alaska; the Rule 5 paperwork from that district; the rebuttable presumption; the arguments and proffers of the parties [Doc. 75-1], and the § 3142(g)

factors. For the reasons discussed herein, the undersigned **RECOMMENDS** that the release order be revoked and Defendant be detained.[11]

                                      Respectfully submitted,

                                      */s/ Debra C. Poplin*
                                      Debra C. Poplin
                                      United States Magistrate Judge

---

[11] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide *de novo* review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).